# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TERRY THOMPSON,                     *

Plaintiff                           *

v                                   *          Civil Action No. ELH-18-1022

CPL. C. OPOKU, *et al.*,            *

Defendants                          *
                                   ***

## <u>MEMORANDUM OPINION</u>

Terry Thompson, a self-represented Maryland prisoner confined at the Maryland Correctional Training Center ("MCTC"), filed suit under 42 U.S.C. § 1983 against Charles Opoku, Aisha Haynes, Derrick Garnett, Jules Rene, Daniel Morgan, Kurt Moore, Dean Gadson, Andrew Jackson, Cpl. Lewis, and Stephen Standback, employees of the Prince George's County Detention Center ("PGCDC") (collectively, the "Correctional Defendants"), and Saba Asrat and Corizon, Inc. ("Corizon") (collectively, the "Medical Defendants").[1] Plaintiff alleges that while he was a pretrial detainee at PGCDC he was assaulted by the Correctional Defendants and that the Medical Defendants denied him constitutionally adequate medical care for the resulting injuries. ECF 1.

Defendants Gadson, Haynes, Jackson, Lewis, Moore, Morgan, Rene, and Stanback have answered the suit. ECF 18.[2] The Medical Defendants have moved to dismiss or, in the alternative, for summary judgment (ECF 20), supported by a memorandum (ECF 20-1) (collectively, the

---

[1] The Clerk shall amend the docket to reflect the full and complete spellings of defendants' names.

[2] Cpl. Opoku has not been served with the complaint. In light of plaintiff's self-represented status, counsel for the Correctional Defendants shall be directed to provide the last known address for Opoku under seal. Additionally, as Correctional Defendants have filed an Answer to the complaint, a scheduling order shall be entered.

"Motion") and exhibits.  Plaintiff opposes the Motion.  ECF 26; ECF 31; ECF 32; ECF 33.  And, he has submitted exhibits.  The Medical Defendants have replied.  ECF 28; ECF 34.

Plaintiff has filed a request for injunctive relief.  ECF 35.  It is opposed by the Medical Defendants. ECF 36.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, the Medical Defendants' Motion shall be granted and plaintiff's motion for injunctive relief shall be denied.

## I.      Factual Background

### A.  Plaintiff's Allegations

Plaintiff was 23 years old at the relevant time.  ECF 26-2 at 36.  He alleges that on September 28, 2015, while housed at the Prince George's County Detention Center, he asked correctional officer Opoku for a pencil, but Opoku signaled him to "'go away.'" ECF 1 at 7. Plaintiff next asked officer Best for a pencil, but Opoku prevented Best from providing the pencil and again told plaintiff to "'go away'" and directed plaintiff to return to his cell. *Id.*  As plaintiff walked away, Opoku followed him and the two exchanged words. *Id.* Opoku raised his left arm, hitting plaintiff's shoulder with his hand. *Id.* Plaintiff reacted by striking Opoku in the face with a closed fist, knocking him unconscious. *Id.*

Officer Haynes pushed plaintiff into his cell and stated, "'now they are about to come fuck you up.'" *Id.* Haynes left and then within one minute an emergency response team ("E.R.T.") came to plaintiff's cell. *Id.* Plaintiff "stuck his hands out of the slot" in order to be handcuffed, but he was directed by an officer to "get on the ground." *Id.* Plaintiff responded that he would come out of the cell and get on the ground. *Id.* An unidentified officer then lifted his mace in an attempt to spray plaintiff. *Id.* Plaintiff backed away from the cell door, which then opened, and plaintiff, who

had been talking to his cellmate, "balled up to protect his face . . . ." *Id.* The officers then entered

his cell and stomped, kicked, punched, and maced him. *Id*. at 7-8. Plaintiff states that the officers

continued to "beat" him even after he was handcuffed, and also maced him. *Id*. at 8.

   After the altercation, plaintiff was escorted to the medical unit by staff and seen by Nurse

Saba Asrat. *Id.* Plaintiff advised Asrat that his "face and back hurts like hell" but Asrat said he

was "'ok'" and he was placed in the medical unit holding cell. *Id.* Plaintiff states that he was

bleeding and in "very bad shape." ECF 26 at 8. Because it was the change of shift, plaintiff was

placed in an isolation cell in the medical unit. ECF 1 at 8. Later that evening, plaintiff went to the

glass at his cell and sought help from an unidentified nurse, telling her that he believed something

was broken and he needed x-rays. ECF 26-3, ¶ 10. She responded that it was late and that she

would need to call the doctor. *Id*.

   Later that day, when a correctional officer sought to have plaintiff moved to housing unit

H-5, solitary confinement, he was seen by another nurse who was responsible for clearing him for

the move. ECF 1 at 8. Plaintiff threatened to kill himself and the nurse instructed the officers to

place him back into the medical isolation cell, where he was put on suicide watch. *Id*. Due to

plaintiff's threats of self harm, plaintiff was seen by Dr. Hernandez. ECF 26-1, ¶ 11. He advised

Hernandez that he was afraid of the E.R.T. officers who had threatened him, telling him they were

not done with him. *Id*. Plaintiff also told Hernandez that he needed medical attention because his

face and back hurt badly. *Id*. Hernandez indicated he would relay the information to medical staff.

*Id*.

   Plaintiff alleges that on September 29, 2015, while being escorted by Officer Jackson, he

was placed "under a camera" and assaulted by Officers Jackson, Lewis and Standback. ECF 1 at

8.  After the assault, further along in his escort, Jackson again placed plaintiff "under a camera" and assaulted him again. *Id.*

On October 1, 2015, plaintiff was seen by a nurse and doctor. *Id*. at 9. He reported face, jaw, and back pain. *Id.* X rays were ordered. *Id.* Plaintiff was transported to the emergency room that evening. Plaintiff advised emergency room personnel that that he was in an altercation two days earlier, although the hospital record also says that the pain began four days earlier. ECF 26-2 at 35. The emergency room notes reflect that plaintiff offered no complaints, except pain to his lower neck. *Id*. at 36.

Examination of plaintiff's head, eyes, and nose were all normal, with a note that the head was atraumatic. *Id*. at 37. Tenderness was observed over plaintiff's back. *Id*. He was prescribed Percocet for pain relief. *Id*.

Plaintiff had a "primary diagnosis" of "spinous process fracture of C7 and T1 after assault" and received a prescription for Ibupofen. *Id*. at 36. The "Doctors Notes" stated, *id.*: "Not an unstable fracture, pain controlled and no neuro deficits or risk of further injury. Patient can wear collar for comfort and f/u with NSGY (Amini). Pain control as well." *Id*. Similarly, the discharge notes indicated a "stable fracture, but can be painful." *Id.* at 40. And, the discharge notes further reflect that plaintiff had facial swelling and pain. *Id.*

A CT scan indicated that, in addition to the fractures at C7 and T1, "There is bilateral nasal bone fractures. There is an old left orbital wall fracture" *Id*. at 40.

In his opposition to the Motion, plaintiff alleges, for the first time, that Corizon "acted [with] deliberate indifference to the need to train its employees to treat serious medical condition, such as those presented by the plaintiff during his commitment in the Upper Marlboro Detention Center." ECF 26 at 2. Plaintiff also claims that Corizon "failed to adequately train and supervise

Defendants Nurses and medical staff in treating patients..." *Id*. Additionally, he alleges that
Corizon provides less medical care than they contract to provide in order to maximize their profits.
*Id*. at 7.

B. Medical Defendants' Response

In support of their motion, the Medical Defendants submitted various exhibits, including
the affidavits of Saba Asrat, R.N., and Meskerem Asresahegn, M.D., as well as relevant portions
of plaintiff's medical records. ECF 20-2 (Asrat Declaration); ECF 20-3 (Asresahegn Declaration
I); ECF 23-1 (medical records); ECF 34-1 (Asresahegn Declaration II).

Asrat evaluated plaintiff on September 28, 2015, at 1:59 p.m., shortly after the first
altercation with staff. ECF 20-2, ¶ 5; ECF 23-1 at 1-2. Although plaintiff's blood pressure and
pulse[3] were recorded as slightly elevated, it was also noted that he was not in acute distress.
Plaintiff's face was swollen, but Asrat denies that plaintiff complained of facial or back pain. She
explains that she did not refer plaintiff to a higher-level medical provider because she did not
believe that plaintiff had suffered a fracture or any other significant injury. ECF 20-2, ¶ 5.

Asrat also noted that plaintiff could be admitted to the isolation cell in the medical unit for
further observation,[4] and she advised plaintiff to contact medical staff if his symptoms worsened.
ECF 20-2, ¶ 5.[5] In her Declaration, Asrat explains that if plaintiff later developed complaints those
would have been addressed by nursing staff who performed rounds in the medical unit. *Id*. Further,

---

[3] Plaintiff disputes that his vital signs were taken. ECF 26-1, ¶ 6.

[4] Plaintiff disputes that he was placed in the isolation cell for observation. ECF 26-1, ¶ 8.
Rather, he contends that was placed in the isolation cell because of a shift change, and the next
shift was responsible for assigning him to another cell. *Id*.

[5] Plaintiff denies that he was advised to contact medical staff if his symptoms worsened.
ECF 26-1, ¶ 9.

she avers that plaintiff showed an understanding of self-care, which symptoms to report, and when to return for follow up care. *Id.* The record demonstrates that Asrat's interaction with plaintiff on September 28, 2015, was the only interaction between Asrat and plaintiff during the relevant time period. ECF 23-1 at 1-19.

After the examination, Asrat discussed plaintiff's condition with Nurse Emily Bello. ECF 20-2, ¶ 5. In light of the swelling on plaintiff's face, they contacted the on-call doctor to obtain an order for Naproxen, a non-steroidal anti-inflammatory medication ("NSAID"), which relieves swelling and pain. Asrat explains that as a Registered Nurse she was not authorized to order medication for plaintiff. Bello called the doctor, who ordered the Naproxen, which plaintiff received later that day. *Id.*

Asrat avers that she was not aware of plaintiff's "complaints of neck and facial complaints." ECF 20-2, ¶ 10. She denies that plaintiff complained to her of pain and did not appear to be in acute distress after the altercation of September 28, 2015. *Id.* Asrat specifically denies that she denied plaintiff medical treatment or otherwise disregarded or ignored his medical needs. *Id.*, ¶ 11. She avers that she relied on her medical judgment while treating plaintiff and is not aware of any policy, custom, or practice of Corizon that harmed or injured plaintiff. *Id.*

Less than two hours later, Bello observed plaintiff in the isolation cell. ECF 23-1 at 3.[6] Plaintiff's face remained swollen, but he sat calmly on his bed. *Id.*

Around 10:00 p.m. that night, after plaintiff was advised that he was going to be moved to Housing Unit 5, plaintiff reported he was suicidal, and Nurse Admassu Zewdiensh placed him on

_____

[6] Plaintiff takes issue with the completeness of his medical records, noting that the records are computer generated and that staff answers questions generated by the computer during evaluations. ECF 26 at 8; ECF 26-1 (plaintiff's Declaration), ¶ 3.

suicide watch in the medical unit. ECF 23-1 at 4. No complaints of pain were noted. *Id*. While plaintiff was on suicide watch on September 29, 2015 and September 30, 2015, he did not express any complaints of jaw, neck, or back pain to the various medical providers who treated him. *Id*. at 5-14.

On October 1, 2015, plaintiff stated that he had difficulty chewing, his jaw and back hurt, and his left eye was blurry. *Id*. at 16. Dr. Asresahegn ordered x-rays of plaintiff's neck and of his face because of observed facial bruising. *Id*. at 19. The x-rays showed fractures of the C6 and C7 spinous processes (bony projections off the back of each vertebra at the bottom of the neck). *Id*. at 26; ECF 20-3, ¶ 10. No fractures were observed in plaintiff's facial bones, nasal bones, jaw, or periorbital bones. ECF 23-1 at 23.

Plaintiff was taken to the hospital, where a CT scan showed fractures of the C7 spinous process and a fracture of the T1 spinous process. *Id*. at 28-29.[7] A CT scan of plaintiff's lumbar spine showed no abnormalities. ECF 20-3, ¶ 10; ECF 23 at 30. The CT scan of plaintiff's head revealed an old fracture of the left lateral orbital wall that Dr. Asresahegn avers was not sustained as a result of the altercations. ECF 20-3, ¶ 10; ECF 23 at 31. No acute facial injuries were observed. *Id*. Plaintiff was provided with cervical collar and Tylenol #3 and discharged to the PGCDC. *Id*.; ECF 23-1 at 32.

The Medical Defendants maintain that although plaintiff's emergency room record referenced bilateral nasal fractures (ECF 33-1 at 5-6), the finding was erroneous. ECF 34-1, ¶ 4.

---

[7] Dr. Asresahegn states that he does not know why the fracture appeared at C6 and C7 spinous process on the x-rays but at C7 and T1 on the CT scan. He states that the treatment for either fracture is the same: immobilization with a cervical collar and medication for pain. ECF 20-3, ¶ 10; *see also* ECF 23-1 at 33 (discharge instructions regarding transverse spinous process fracture indicating injury would take 4-6 weeks to heal and could be treated with bed rest and pain medicine).

They assert that neither the x-rays of October 1, 2005, nor the CT scan of plaintiff's head, showed a nasal fracture. ECF 34-1, ¶ 4. Additionally, the discharging physician did not indicate that any further treatment was required for an injury to plaintiff's nose. Lastly, Dr. Asresahegn explains that to the extent plaintiff's nose was injured, he had access to pain medication from the date of the first altercation and the care he received was within the standard of care. ECF 34-1, ¶ 6.

On October 2, 2015, plaintiff was prescribed Tylenol #3 for four days. ECF 23-1 at 34. Plaintiff refused the medication on October 4 and 5, 2015, stating that he did not need the medications. *Id.*

Dr. Asresahegn states that plaintiff healed from his injuries. ECF 20-3, ¶ 12; *see also* ECF 23-1 at 20 (medical record dated 10/27/15; plaintiff "sustained C-spine fx C5, C6 about 3 weeks ago, denied any complaints. He has been wearing the Cspine collar on and off, but remained in his cell, no physical activity); *id.* at 22 (medical record dated 11/3/15, reporting history of fracture and noting plaintiff denied any complaints); *id.* at 25 (medical record dated 11/9/15, repeating x-ray of cervical spine and noting no significant changes since x-ray of 10/1/15).

Dr. Asresahegn avers that plaintiff was provided appropriate medical treatment, including repeated examinations, pain medications, including NSAIDS and narcotic medication, as well as diagnostic testing and orthopedic devices. ECF 20-3, ¶ 14

## II. Standard of Review

The Medical Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. Appx. 632, 638 (4th Cir. 2016)

(per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure

to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. Appx. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. Appx. at 638.

Plaintiff's previous request for discovery (ECF 27) was denied. ECF 30. In his response in opposition to the Motion, plaintiff claims that he was not provided copies of his medical records. ECF 26-1, ¶ 4. However, he attached as an exhibit to his opposition response copies of his medical record. *See* ECF 26-2 at 10-43; ECF 33-1.

Plaintiff also asks to be provided all video footage of himself on September 28, September 30, and October 1, 2015. ECF 26-1, ¶ 10. Plaintiff fails to explain how the video evidence is

necessary to his opposition to the Motion. Additionally, his request is not supported by the appropriate affidavit. The central question, as discussed more fully below, is whether the Medical Defendants acted with deliberate indifference after the altercation of September 28, 2015. It is unclear how any video evidence is necessary to resolve this issue. As such, I am satisfied that it is appropriate to address the Medical Defendants' Motion as one for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541

U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585–86

(1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

### A.

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

### B.

It appears that plaintiff was in pretrial status at the PGCDC. Deliberate indifference to the serious medical needs of a pretrial detainee is analyzed as a matter of due process, under the

Fourteenth Amendment. "Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983)); *see Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) (concluding that, because it is sufficient for liability under the 8th Amendment, "deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial"); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (applying deliberate indifference standard to pretrial detainee's claim that he was denied needed medical treatment); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.")).

In sum, "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are coextensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Therefore, I turn to an Eighth Amendment analysis.

The Eighth Amendment to the Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th

Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer*, 511 U.S. at 837; *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A "'serious ... medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40.

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001). As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted). Although this "'entails more than mere negligence ... it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835).

Thus, the subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40; *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). As the *Farmer* Court explained, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Therefore, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.; Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it ... [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences ... To lower this threshold would thrust federal courts into the daily practices of local police departments."). Therefore, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra*, 429 U.S. at 106). And, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S.

at 842).  In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that

he was unaware of a risk . . . ."  *Brice*, 58 F.3d at 105.

In *Scinto*, the Fourth Circuit said, 841 F.3d at 226:

A plaintiff also makes out a prima facie case of deliberate indifference when he
demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive,
well-documented, or expressly noted by prison officials in the past, and the
circumstances suggest that the defendant-official ... had been exposed to
information concerning the risk and thus must have known about it...." *Parrish ex
rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original)
(internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct
1970).  Similarly, a prison official's "[f]ailure to respond to an inmate's known
medical needs raises an inference [of] deliberate indifference to those needs."
*Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other
grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still

avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not

averted."  *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light

of the risk the defendant actually knew at the time.  *See Brown v. Harris*, 240 F. 3d 383, 390 (4th

Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions

actually taken in light of suicide risk, not those that could have been taken)); *see also Cox v. Quinn*,

828 F.3d 227, 236 (4th Cir. 2016).

A delay in medical treatment may constitute deliberate indifference. *Smith v. Smith*, 589

F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05).  The plaintiff must show,

however, that the delay in providing medical care caused him to suffer substantial harm.  *See Webb

v. Hamidullah*, 281 Fed. Appx. 159, 166, 2008 WL 2337608 * 6 (4th Cir. 2008).  Substantial harm

can be shown by "lifelong handicap; permanent loss, or considerable pain."  *Shabazz v. Prison

Health Servs. Inc.*,  2011 WL 3489661, at * 6 (E.D. Va. 2011) (quoting *Garrett v. Stratman*, 254

F.3d 946, 950 (10th Cir. 2001); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

Viewed in the light most favorable to plaintiff, the evidence establishes that he received constitutionally adequate medical care from Nurse Asrat.  The only interaction Nurse Asrat had with plaintiff was immediately after the first altercation with staff.  The medical records reflect that, other than swelling on his face, he was in no acute distress. After Asrat's evaluation of plaintiff he was placed in a medical observation cell. Asrat consulted with another nurse, who arranged for plaintiff to receive analgesic pain medication. Within two hours plaintiff was observed by another nurse, who noted that plaintiff was sitting calmly in his cell. Plaintiff was seen over the next few days by numerous medical and mental health providers and articulated no additional complaints until after the second altercation with staff.

Ultimately, plaintiff was diagnosed with two spinal fractures and possibly a nasal fracture. Although it is unclear from the record before the court whether the injuries were sustained in the first assault or the second assault, it is undisputed that those injuries were not apparent to Saba and that the standard of care for such injuries, provision of pain medication and rest, were provided to plaintiff, even before his formal diagnosis.

There is no evidence presented, nor does plaintiff forecast presentation of admissible evidence, proving that the delay in receiving treatment was deliberate, or caused him harm or needless suffering, or that Asrat played a role in creating that delay. As such, Asrat is entitled to summary judgment in her favor as to all claims.  Plaintiff received analgesic pain medication, diagnostic testing, and orthopedic device, for his injuries. When viewing the evidence as a whole, and in the light most favorable to plaintiff, no evidence exists that the conduct alleged amounted to deliberate indifference by Asrat. *See Estelle*, 429 U.S. at 105-06 (holding that an inadvertent

failure to provide adequate medical care does not amount to deliberate indifference). Indeed, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)). No exceptional circumstances exist here.

Similarly, plaintiff's claims against Corizon are unavailing. First, Corizon cannot be held responsible under a theory of respondeat superior. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. Appx. 279, 282 (4th Cir. 2009).

In *Monell v. Dep't. Social Servs. of New York,* 436 U.S. 658, (1978), the Supreme Court concluded that while local government entities are considered "persons" for the purposes of § 1983, they cannot be held liable simply because they employ an individual who committed an unlawful act. *Id.* at 690–91. Local governments can only be sued if the constitutional violation alleged results from a custom or policy of the local government. *Id.* This standard also applies to private companies, such as Corizon. *Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 728 (4th Cir.1999) (citations omitted).

In order to succeed on his claim against Corizon, plaintiff must establish the existence of a constitutional violation on the part of the employee. *See Temkin v. Frederick Cty. Comm'rs*, 945

F.2d 716, 724 (4th Cir. 1991) (§ 1983 claim of inadequate training or supervision cannot be established without a finding of a constitutional violation on the part of the person being supervised); *see also Dawson v. Prince George's County*, 896 F. Supp. 537, 540 (D. Md. 1995). Second, plaintiff must show that any constitutional violations were proximately caused by a policy, custom, or practice of the defendants. *See Monell*, 436 U.S. at 691. Policies arise from written ordinances, regulations, and statements of policy, *id*. at 690; decisions by policymakers, *Pembaur v. Cincinnati*, 475 U.S. 469, 482-83 (1986); and omissions by policymakers that show a "deliberate indifference" to the rights of citizens. *See Canton v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiff baldly claims that Corizon's efforts at costs savings resulted in improper training of Nurse Asrat which resulted in his alleged injury. Plaintiff fails to specify what those cost saving measures were or what specific training Asrat lacked. Moreover, as noted above, he has failed to demonstrate that he suffered a constitutional injury arising from the conduct of Nurse Asrat. As such, Corizon, Inc. is also entitled to summary judgment.

## IV. Injunctive Relief

Also pending is plaintiff's request for a temporary restraining order or preliminary injunction. ECF 35. Plaintiff, now detained at the Maryland Correctional Training Center, complains that his prescription for Baclofen was discontinued and that although he continues to receive Naproxen for pain relief he wakes up each morning stiff and aching without the additional pain reliever Baclofen. *Id*. at 2-3.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren,* 553 U.S. 674, 689-90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities

tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

Plaintiff has not sustained his burden of demonstrating that his requested injunctive relief is warranted. He has failed to demonstrate that the requested injunctive relief is necessary to avoid irreparable harm or that he is likely to succeed on the merits. As an initial matter, this complaint concerns the alleged use of excessive force and denial of medical care while plaintiff was a pretrial detainee at PGCDC, not his current medical treatment provided as a state inmate at MCTC. Additionally, plaintiff's motion demonstrates that he has access to medical care and as such the equities do not tip in his favor. Accordingly, the request for injunctive relief is denied.

## V.  Conclusion

The record evidence, which is for the most part undisputed, establishes that plaintiff's constitutional right to adequate medical care for a serious medical need was not violated by the Medical Defendants. They did not exhibit a deliberate indifference to a serious medical need. Therefore, the Medical Defendants are entitled to summary judgment in their favor. Plaintiff's request for injunctive relief shall be denied.

This case shall proceed as to the Correctional Defendants.  A separate Order follows.


<u>May 14, 2019</u>                                    _____/s/_____
Date                                                          Ellen L. Hollander
                                                                 United States District Judge